UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Joetta P. Whitlock, Trustee of the Joetta P. Whitlock Trust, ) ) ) Plaintiff, ) vs. ) ) Stewart Title Guaranty Company, ) ) Defendant. ) ) | Civil Action No.: 4:10-cv-01992-RBH **CERTIFICATION ORDER** |

After reviewing the briefing by the parties on cross motions for summary judgment and hearing oral arguments regarding the motions, this Court has determined that the case presents questions of law of the State of South Carolina which may be determinative of the cause.[1] Accordingly, pursuant to South Carolina Appellate Rule 244, the United States District Court hereby certifies the below question of law to the South Carolina Supreme Court for instructions regarding the question of law.

Federal courts in diversity cases apply the law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). In situations in which "there is no case law from the forum state which is directly on point, the district court attempts to do as the state court would do if confronted with the same fact pattern." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994)(internal citations omitted). The Fourth Circuit has noted that "[o]nly if the available state law is clearly insufficient should the court certify the issue to the state court." *Id.*, citing *Smith v. FCX, Inc.*, 744 F2d 1378,

---

[1] In Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry # 18, Plaintiff suggests that the court certify the novel question of state law presented by the case to the State Supreme Court. (Docket Entry # 18, p.6, n.5).

1

1379 (4th Cir. 1984)).

This matter is an action in which Plaintiff, Joetta P. Whitlock, Trustee of the Joetta P. Whitlock Trust, seeks damages against the defendant, Stewart Title Guaranty Company, for breach of contract based on an owner's title insurance policy issued by the defendant to the plaintiff. Based on this Court's previous rulings in the case, no exclusions apply as a matter of law. The sole issue remaining is the law regarding damages.

## I. STATEMENT OF FACTS

The undisputed facts show that on October 30, 2006 the plaintiff purchased for cash a residential lot located at 2330 John Henry Lane, Myrtle Beach, South Carolina for $410,000.00. The lot fronts on the Intra-coastal Waterway, and a mobile home and out-building are situated on the property. In 1931, a predecessor-in-interest of the plaintiff conveyed to the State of South Carolina what is generally known as a spoilage easement over the property and adjacent property. This easement is recorded in the land records of Horry County. The spoilage easement was given so as to provide for the construction and maintenance of what became the Intra-Coastal Waterway. Plaintiff purchased an owner's title insurance policy from the defendant at closing for the face amount of $410,000, the amount of the purchase price. The spoilage easement was not included as an exception to coverage in the title policy and the existence of the spoilage easement, and its possible effect on the property, was not known by the plaintiff at the time that she purchased the property.

In January of 2010, the plaintiff went to the Horry County Building Department to begin the process of obtaining a building permit to construct a permanent home on the property. Plaintiff learned that Horry County would not issue a building permit for the construction of a permanent home on the property because it was encumbered by the spoilage easement. This was on the basis of Horry County

resolution (R-143-03), in effect since 2003. The resolution allowed the issuance of building permits in the area for repair, remodeling, and replacement of existing structures but continued the County's previous policy not to otherwise allow building permits due to the existence of the easement. It is undisputed that the easement and resolution were in effect at the time the title policy was issued.

## II. NATURE OF THE CONTROVERSY

The policy provides, "we will insure you against *actual loss* resulting from any title risks covered by this Policy-up to the policy Amount." The policy also provides "we will pay up to your *actual loss* or the Policy Amount in force when the claim is made–whichever is less." (Emphasis added). The term "actual loss" is not defined by the policy.

Defendant asserts that the loss to the plaintiff should be measured on the date the spoils easement was discovered, January of 2010. Plaintiff asserts that the proper valuation date is the date the policy was issued. The answer to the question will substantially affect the amount of the plaintiff's recovery because the property has depreciated since the date of the purchase.

There are two cases in which the South Carolina Supreme Court has considered the interpretation of certain aspects of a title insurance policy, but the issue presented here was not present in either case. In *Stanley v. Atlantic Title Ins. Co.*, 377 S.C.405, 661 S.E.2d 62 (2008), the Court held: "The purpose of title insurance is seeking to put the insured in the position that he thought he occupied when the policy was issued." 661 S.E.2d at 63. The case further states that "damages should be measured by the value of the title (Plaintiff) thought he was getting versus the value of the title he received." *Id*. at 66. In *Firstland Village Associates v. Lawyer's Title Insurance Co*., 277 S.C.184, 284 S.E.2d 582 (1981), the court states that title insurance "is designed to save (the insured) harmless from any loss through defects, liens, or encumbrances that may affect or burden his title when he takes it."

Neither *Stanley* nor *Firstland Village* addresses the issue presented in the case at bar, which is the appropriate date to measure the diminution in value of the property from the title defect. Many treatises have discussed this issue, and cases from across the country differ in their approaches. *See e.g.*, Nielson, *Title & Escrow Claims Guide*, at 3-5 (2d Ed.2010); Burke, *Law of Title Insurance*, § § 7.03-7.05; *Overholtzer v. Northern Counties Title Ins. Co.*, 116 Cal.App.2d 113, 253 P.2d 116 (1953); *Jalowitz v. Ticor Title Ins.*, 478 N.W.2d 67 (Wisc. App. 1991); *Glyn v. Title Guarantee & Trust* Co., 117 N.Y.S. 424 (1909); and *Beaullieu v. Atlanta Title Trust Co.*, 4 S.E.2d 78 (Ct. App. Ga. 1939).

### III. CERTIFIED QUESTION OF LAW

In the case of a partial failure of title which is covered by an owner's title insurance policy, where the title defect cannot be removed, should the actual loss suffered by the insured as a result of that partial failure of title be measured by the diminution in value of the insured property as a result of the title defect as of the date of the purchase of the insured property, **or** as of the date of the discovery of the title defect?

**IT IS SO ORDERED**[2].

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Court Judge

October 20, 2011
Florence, South Carolina

---

[2] This Court will provide the Supreme Court with the insurance policy or any other portion of the record that it requests.

4